FILED

NOT FOR PUBLICATION

APR 1 2021

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>PETER SZANTO,<br>    Debtor. | BAP No. OR-20-1106-TLB<br><br>Bk. No. 3:16-bk-33185 |
| PETER SZANTO,<br>    Appellant,<br>v.<br>UNITED STATES TRUSTEE,<br>    Appellee. | Adv. No. 3:18-ap-03022<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Oregon
Peter C. McKittrick, Bankruptcy Judge, Presiding

Before: TAYLOR, LAFFERTY, and BRAND, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

# I. INTRODUCTION

Chapter 7[1] debtor Peter Szanto appeals pro se[2] from the bankruptcy court's judgment denying him a discharge under §§ 727(a)(2)(B), (4)(A), (4)(D), and (6)(A). We AFFIRM.

# II. FACTS[3]

## A. Szanto files bankruptcy; his schedules and statement of financial affairs evidence material omissions.

On August 16, 2016, Szanto filed a chapter 11 petition. When he filed his bankruptcy schedules ("Schedules") and statement of financial affairs ("SOFA"), he swore under penalty of perjury that they were true and correct. And under oath at a § 341(a) meeting of creditors, he again testified to their accuracy. But accurate, they were not.

Among other things, Szanto failed to disclose over ten financial accounts with a collective balance of approximately $500,000 ("Undisclosed Accounts") and a 30 percent ownership interest in Yankee Trust Corp. ("Yankee Trust"), which at the end of August 2016 had an E*TRADE account and a Bank of America account with balances of about $687,000

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] Szanto is not an ordinary pro se debtor. This is his third bankruptcy case; he has a master's degree in business administration with a specialty in accounting and a law degree; and he is a serial litigant and a party to at least fifteen cases nationwide.

[3] We have exercised our discretion to review the bankruptcy court's dockets, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

2

and $15,000, respectively.

He further failed to disclose in his SOFA that he was a director of Yankee Trust on the petition date and that, within the two years preceding the petition date, he deposited over a million dollars into its E*TRADE account and transferred another $39,000 from an Undisclosed Account to the Yankee Trust.

**B. Szanto engages in significant undisclosed postpetition financial activity.**

During his chapter 11 case, Szanto filed required monthly operating reports ("MORs"), signed them under penalty of perjury, and swore that "every financial account used by the debtor" was reflected in the report. But his MORs fell far short of accurate disclosure.

Szanto continued to conceal the Undisclosed Accounts and failed to report postpetition use of such accounts. He also failed to report the unauthorized postpetition formation of an Oregon limited liability company ("LLC") and the unauthorized transfer of $367,000 of estate funds into its coffers. And his MORs neglected to mention the unauthorized opening of an HSBC bank account ("HSBC Account") that during the bankruptcy reached a $470,000 balance.

By April of 2017, Szanto's creditors were hot on the trail of more accurate financial information; but he continued to game the system. The bankruptcy court granted the IRS's Rule 2004 motion and required Szanto to produce statements for any financial account in which he had an

interest; he failed to do so. Instead, in June of 2017, he transferred about $200,000 from the still-undisclosed HSBC Account to other accounts. He did not report the transfers in his MORs.

**C. Szanto ignores orders directly prohibiting asset transfers, and the bankruptcy court converts his case.**

In September of 2017, the IRS moved for conversion to chapter 7 ("Conversion Motion"). In the face of this highly probable loss of asset control and mere days before a multi-day hearing on the Conversion Motion, Szanto wrote a check for nearly $100,000 to his wife from the HSBC Account. Not surprisingly, the bankruptcy court did not authorize this transaction.

And given Szanto's track record of unauthorized transfers, on day one of the hearing, the United States Trustee ("UST") made an oral motion to restrain Szanto from taking further action regarding his accounts. Szanto voluntarily and repeatedly agreed to entry of an order restricting him from transferring funds among his accounts or to third parties. The bankruptcy court orally granted the unopposed motion effective immediately and entered an order ("No-Transfer Order") the next day which, with exceptions not relevant here, prohibited Szanto and all entities he directly or indirectly owned, controlled, or used from transferring or causing the transfer of any estate property.

But consistent with his past actions, Szanto paid no attention to the No-Transfer Order and moved almost $278,000 from the LLC's E*TRADE

4

account to an Undisclosed Account between December 1 and 5 of 2017.

On December 5, 2017, the bankruptcy court entered an order converting the case ("Conversion Order"). In its extensive findings, the bankruptcy court outlined overwhelming evidence supporting conversion, including Szanto's unexcused failures to disclose the material financial information outlined above and evident bad faith. The evidence included account statements obtained by the IRS directly from financial institutions, which revealed "gross discrepancies" with the MORs and the account statements Szanto did provide. The bankruptcy court rejected Szanto's many excuses for his misrepresentations and omissions, including his contention that they were innocent mistakes. It found that contention "simply not believable" considering the "number and materiality of the omissions" and Szanto's "strenuous efforts to prevent discovery of the omissions after the IRS began its investigation . . . ."

The Conversion Order echoes the No-Transfer Order; it prohibited Szanto from using estate assets and required him to provide specific information to the chapter 7 trustee by December 19, 2017. It warned that non-compliance could result in a denial of discharge.

**D. Szanto ignores the now dual orders prohibiting asset transfers and does not provide information or asset turnover as required by the Conversion Order.**

In the weeks following entry of the No-Transfer Order and Conversion Order, Szanto transferred nearly a million dollars to his

5

Undisclosed Accounts in violation of the orders. And he did not provide the chapter 7 trustee with an account of transfers he made during the chapter 11 case or the account statements as required by the Conversion Order. And to complete the trifecta of noncompliance, he did not transfer all estate property to the trustee as required by the Conversion Order.

**E. The UST responds to Szanto's actions and omissions with a complaint to deny him a discharge, and the chapter 7 trustee seeks to hold him in contempt.**

On March 5, 2018, the UST filed a complaint under §§ 727(a)(2)(B), (4)(A), (4)(D), and (6)(A) for denial of discharge based on the facts described above.

Thereafter, the chapter 7 trustee filed a motion seeking to hold Szanto in contempt for failing to comply with the Conversion Order and an order again requiring turnover of estate funds. In particular as to turnover, Szanto refused to turn over funds held in foreign accounts or to sign an authorization form ("Release Form") that at least one foreign bank required before turnover.

The bankruptcy court found Szanto in contempt. The Contempt Order required him, among other things, to sign all necessary Release Forms. Szanto never fully complied; he refused to sign Release Forms.

And following a two-day trial, the bankruptcy court entered an extensive thirty-one page memorandum decision explaining its reasons for denying Szanto a discharge under §§ 727(a)(2)(B), (4)(A), (4)(D), and (6)(A)

("Memorandum"). Thereafter, the bankruptcy court entered judgment denying Szanto a discharge. He timely appealed.[4]

## III. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## IV. ISSUE

Did the bankruptcy court abuse its discretion in denying Szanto a discharge?

## V. STANDARDS OF REVIEW

We review a denial of discharge judgment under the following standards of review:

> (1) the [bankruptcy] court's determinations of the historical facts are reviewed for clear error; (2) the selection of the applicable legal rules under § 727 is reviewed de novo; and (3) the application of the facts to those rules requiring the exercise of judgments about values animating the rules is reviewed de novo.

*Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010) (quoting *Searles v. Riley (In re Searles)*, 317 B.R. 368, 373 (9th Cir. BAP 2004)).

---

[4] After reviewing the parties' briefs and the appellate record, the Panel determined that oral argument was unnecessary and that the appeal was suitable for submission on the briefs and record. The UST agreed, but the Panel scheduled oral argument and then rescheduled it at Szanto's request. Within a week of the rescheduled oral argument, Szanto made another request that it be rescheduled, which the Panel, while respectful of Szanto's decision not to appear at the rescheduled oral argument, denied. It thus decides this appeal based on the written arguments in the briefs and the record on appeal; this review is sufficient for a fully informed decision.

A bankruptcy court's factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Id*. We give great deference to the bankruptcy court's factual findings that are based on determinations regarding the credibility of witnesses because, as the trier of fact, it had the opportunity to note "variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Id*. (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)).

## VI. DISCUSSION

On appeal, Szanto virtually ignores the bankruptcy court's factual findings and raises a bevy of frivolous assertions. We find no merit in any of his arguments and determine that the bankruptcy court's decision to deny him a discharge is well-supported.

**A. The bankruptcy court properly denied Szanto a discharge under all applicable theories.**

Szanto vaguely argues that the bankruptcy court abused its discretion in denying him a discharge. But he never directly attacks its detailed factual findings, nor does he point to any error in the selection of applicable law, nor does he pinpoint an alleged error in the application of the law to the facts. We discern no error and quickly explain our conclusion as to all four theories.

Section 727(a)(2)(B) provides that a debtor shall not be granted a discharge if, with intent to hinder, delay, or defraud a creditor or trustee,

8

he transfers or conceals estate assets. As to intent, a bankruptcy court can rely on factors such as a pattern of falsity or cumulative falsehoods; direct evidence of intent, such as a confession from the debtor, is not required. *See Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751, 754 (9th Cir. 1985).[5]

The UST provided ample proof that Szanto failed to disclose his Undisclosed Accounts, Yankee Trust, postpetition creation of the LLC, and transfer of funds to the LLC's account. Its evidence also established that Szanto concealed and transferred assets with the intent to hinder or delay his creditors; Szanto fought the chapter 7 trustee every step of the way and timed formation of the LLC and several undisclosed postpetition transfers of assets in apparent response to the IRS's investigation. The bankruptcy court also appropriately relied on findings made in connection with the Conversion Order to determine that the Undisclosed Accounts were estate assets and that Szanto's misconduct in his chapter 11 case was "a deliberate and concerted effort to withhold information."[6]

Section 727(a)(4)(A) provides for denial of discharge where during his bankruptcy a debtor knowingly and fraudulently makes a false oath or account. The alleged falsity must be material. *In re Retz*, 606 F.3d at 1197.

---

[5] Materiality is clearly evident here as Szanto's transfers involved large amounts of money; but, it is worth noting that there is no materiality requirement under § 727(a)(2)(B).

[6] Although Szanto had appealed the Conversion Order, the bankruptcy court correctly determined that, under substantive federal law concerning issue preclusion as applicable to federal orders, Szanto could not attack the Conversion Order's findings even while it was on appeal. *See Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir.

The record plainly evidences that Szanto made numerous knowing, fraudulent, and materially false oaths in his Schedules, SOFA, MORs, and in his meeting of creditors testimony.[7]

Section 727(a)(4)(D) supports a denial of discharge when a debtor knowingly and fraudulently withholds from an officer of the estate recorded information relating to his property or financial affairs. The bankruptcy court's determination that Szanto knowingly and fraudulently withheld financial information that the Conversion Order required him to provide is abundantly supported by the record.

Section 727(a)(6)(A) provides that, subject to exceptions not applicable here, a debtor shall not be granted a discharge if he refused to obey a lawful order of the bankruptcy court. The debtor must be aware of the order, and his noncompliance must be willful or intentional—that is, something more than a mere failure to obey the order through inadvertence, mistake, or inability to comply. *Gugino v. Clark (In re Clark)*,

---

2007).

[7] In the Conversion Order, the bankruptcy court found that Szanto made materially false statements in his Schedules and MORs. *See Hannon v. ABCD Holdings, LLC (In re Hannon)*, 839 F.3d 63, 71 (1st Cir. 2016) ("We do not discern any principled basis upon which to draw a meaningful distinction between the certification language used on the MOR form from that used on a debtor's schedules, and think the nearly identical language used on the MOR form would likely constitute a verification under oath for § 727(a)(4)(A) purposes."); *In re Retz*, 606 F.3d at 1196 (a false statement or omission in a bankruptcy schedule or statement of financial affairs may constitute a false oath under § 727(a)(4)(A)). The bankruptcy court found that Szanto's MORs were inaccurate and were "a deliberate and concerted effort to withhold information." Szanto is precluded from attacking these factual findings.

10

525 B.R. 442, 463 (Bankr. D. Idaho 2015), *aff'd*, BAP No. ID-15-1065-KiFJu, 2016 WL 1377807 (9th Cir. BAP Mar. 29, 2016), *aff'd*, 693 F. App'x 644 (9th Cir. 2017). But once a sufficient act of noncompliance is found, the bankruptcy court has broad discretion to find a particular violation of its orders so serious as to require denial of discharge. *In re Devers*, 759 F.2d at 755.

The record here supports the bankruptcy court's conclusion that Szanto was aware of the No-Transfer Order and Conversion Order, yet he willfully and intentionally refused to obey them in multiple ways. Szanto claimed that he did not violate these orders by transferring funds because the transfers happened automatically as the result of proprietary trading software. The bankruptcy court rejected this explanation because Szanto repeatedly stated at the Conversion Motion hearing that he had stopped all automatic transfers and, in any event, it was not believable that the transfers occurred automatically. Further, Szanto never provided any corroborating evidence.

As to the failure to sign Release Forms, the bankruptcy court rejected Szanto's claim that he was justified in violating the order because the funds allegedly belonged to his wife. The bankruptcy court stated that even if it were to accept as true the unsupported, self-serving testimony that he did not comply with the Contempt Order because he feared the trustee would seize funds necessary for his wife's medical care, which it did not, that is not a defense to the UST's claim in this matter. We agree; Szanto was

required to comply because lawful orders must be obeyed unless and until reversed, and he did not appeal the Contempt Order. *See Maness v. Meyers*, 419 U.S. 449, 459 (1975).

The UST bore the ultimate burden of proof at trial and met it. Once the UST made a prima facie showing, Szanto bore the burden to "offer credible evidence" in response, without which "it is axiomatic that the debtor cannot prevail." *In re Devers*, 759 F.2d at 754. He failed utterly in this regard.

**B. Szanto's other arguments on appeal are frivolous.**

Ignoring the overwhelming evidence in the record, Szanto relies on collateral attacks. Each contention is utterly lacking in merit.

### 1. Denial of ECF privileges

Early in the bankruptcy case, the bankruptcy court refused to grant Szanto ECF privileges. He mistakenly asserts this was a due process violation. But "ECF access is not a 'due process right[,' it] is granted at the discretion of the Court." *Sieverding v. U.S. Dep't. of Just.*, 847 F. Supp. 2d 75, 87 (D. D.C. 2012), *aff'd*, No. 13-5060, 2013 WL 6801184 (D.C. Cir. Dec. 11, 2013); *see also Sphear Invs., LLC v. Sunglass Int'l, LLC*, 584 F. App'x 602, 603 (9th Cir. 2014). In addition, there is no indication in the record that Szanto was deprived of an opportunity to be heard at any point in the § 727 action because of the denial of ECF privileges. *Rains v. Flinn (In re Rains)*, 428 F.3d 893, 903 (9th Cir. 2005) (The "fundamental requisite of due process of law is the opportunity to be heard.").

Szanto's suggestion that the bankruptcy judge somehow usurped the chief bankruptcy judge's authority in denying his request for ECF privileges is meritless. The order denying Szanto ECF privileges clearly stated that the presiding judge consulted the chief bankruptcy judge before denying Szanto ECF privileges.

**2. Judicial bias**

Szanto also argues that the bankruptcy judge was "a prejudiced participant whose goal was intentional denial to Appellant of all Bankruptcy relief regardless of facts."[8] But he filed a motion to recuse the judge, which was denied, and he did not appeal from that order.

Further, the record does not support his accusations of bias. He argues that the bankruptcy judge's alleged bias is shown by rulings with which he disagrees, primarily related to the Conversion Order. "But

---

[8] This is not the first time Szanto has appealed a bankruptcy court order based on alleged judicial bias. He appealed an order dismissing his prior chapter 11 case based, in part, on alleged judicial bias of a different bankruptcy judge. His allegations of judicial bias were wholly rejected by the district court and Ninth Circuit. *Szanto v. U.S. Tr. (In re Szanto)*, No. 3:14-cv-00355-RCJ, 2015 WL 6872473, at *3 (D. Nev. Nov. 9, 2015) ("Appellant's first and third enumerated grounds for reversal concern the Bankruptcy Judge's alleged bias against Appellant and his failure to recuse. Appellant first argues that the Bankruptcy Judge 'abdicated all impartiality and became a biased participant in this action.' The Court disagrees. Although the Bankruptcy Judge became frustrated with Appellant and ruled against him in virtually all respects, judges' frustration with litigants or attorneys who present non-meritorious arguments or vexations motions is not uncommon and does not constitute impermissible bias."); *Szanto v. U.S. Tr. (In re Szanto)*, 703 F. App'x 581, 582 (9th Cir. 2017) ("We reject as unsupported by the record Szanto's contentions concerning bias of the bankruptcy judge or that the judge's impartiality might reasonably be questioned.").

13

judicial rulings alone almost never constitute valid basis for a bias or partiality recusal motion." *Liteky v. United States*, 510 U.S. 540, 541 (1994). Even critical, disapproving, or hostile judicial remarks during a trial to a party ordinarily do not support a bias or partiality challenge. *Id.* at 555. Such remarks do not suggest bias "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. Here, there is no indication in the rulings of any bias against members of a protected class or against Szanto in particular.

Szanto also argues that the bankruptcy judge was biased against him based on unspecified comments regarding his demeanor. However, any such alleged comments do not undermine the denial of discharge, which is abundantly supported by evidence independent of his demeanor and lack of credibility. Nor are comments about demeanor improper. *See Anderson*, 470 U.S. at 575; *Valenzuela v. Michel*, 736 F.3d 1173, 1176 (9th Cir. 2013); *In re Retz*, 606 F.3d at 1196; *In re Cooper*, 821 F.2d 833, 841 (1st Cir. 1987) ("It is a judge's job to make credibility determinations and inferences of partiality do not arise simply because the job is performed.").

### 3. Comments regarding vexatious litigant status

Szanto argues that two comments in the lengthy Memorandum about his vexatious litigation conduct require reversal as they are "contrary to [the Panel's] own long and thorough analysis in 2012" in which it stated, in a two-paragraph order denying appellee's vexatious litigant motion, that "the Panel is presently unable to conclude that appellant is a vexatious

litigant." *Szanto v. Lewin (In re Szanto)*, Dkt. No. 24, BAP No. CC-12-1238 (9th Cir. BAP Dec. 5, 2012). Szanto has not shown that the bankruptcy court's comment that he is a vexatious litigant is clearly erroneous, and it is not precluded by a Panel determination years earlier.[9]

In fact, several courts have found Szanto to be a vexatious litigant well after entry of the Panel's 2012 order.[10]

Finally, even if the bankruptcy court's assessment of Szanto as a vexatious litigant were inapt, he has not explained how the assessment rendered the denial of his discharge an abuse of discretion.

**4. Right to a jury trial**

Szanto argues his denial of discharge should also be reversed because he was denied a jury trial. But "there is no right to a jury trial in a § 727 action." *Brandenfels v. Ticor Title Ins. Co. (In re Brandenfels)*, BAP No. OR-14-

---

[9] In 2016, the Panel observed in another appeal that:

Mr. Szanto is a serial litigant. The bankruptcy court noted that there are seventy-six cases nationwide involving a party named Peter Szanto, and Mr. Szanto acknowledged that he was a party to at least fifteen or twenty of those cases. At oral argument, Mr. Szanto acknowledged that the California state court found him to be a vexatious litigant.

*Szanto v. Szanto (In re Szanto)*, BAP No. NV-14-1517-FBD, 2016 WL 3209463, *1 n.3 (9th Cir. BAP May 31, 2016).

[10] Szanto is currently subject to a pre-filing review order in the Ninth Circuit because of his "practice of burdening [that] court with meritless litigation." *In re Szanto*, No. 17-80195, Dkt. 2 at 1 (9th Cir. Oct. 2, 2017). Similarly, the bankruptcy court previously entered its own pre-filing vexatious litigant order against Szanto in another adversary proceeding related to the bankruptcy case. *See Szanto v. Szanto (In re Szanto)*, No. 16-3114-PCM, 2019 WL 6332372 (Bankr. D. Or. Nov. 25, 2019), *appeal docketed*, No.

1145-FJuKi, 2015 WL 5883317, at *8 (9th Cir. BAP Oct. 7, 2015), *aff'd*, 692 F. App'x 461 (9th Cir. 2017).

### 5. Denial of joinder motion

Next, Szanto claims the bankruptcy court erred by denying joinder of "the Hendersons" as indispensable parties. He fails to explain who the Hendersons are or how the failure to join them led to any reversible error. Nor could he, as the bankruptcy court did not rely on any evidence relating to the Hendersons.

Szanto then argues that "[t]he Hendersons were indispensable, because they could offer testimony and provide evidence that the conversion hearing evidence (which was going to also be used as evidence to deny discharge) was pure fabrication." But the mere fact that he sought evidence from them does not make them necessary parties. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 188 (2d Cir. 1999); *Costello Pub. Co. v. Rotelle*, 670 F.2d 1035, 1044 (D.C. Cir. 1981).

### 6. Alleged denial of access to discovery and discovery abuse

Lastly, in his opening brief Szanto complains about alleged discovery abuse and the denial of his motion for terminating sanctions based thereon. But Szanto has not shown any abuse of discretion in the bankruptcy court's discovery rulings. *See Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 975 (9th Cir. 2017) (holding trial court has wide discretion over discovery and discovery sanctions). He also failed to show how any of those rulings

---

3:19-cv-02043-SI (D. Or. Dec. 11, 2019).

prejudiced him. *Id*. at 976-77 (holding appellant must show prejudice to overturn discovery ruling). And while he argues that he was denied the opportunity to see documents to which he would be required to respond at trial, he did not identify specific documents used at trial that he had not previously seen to allow us to conduct an appellate review.

## VII. CONCLUSION

Based on the foregoing, we AFFIRM.